IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIBERTY MUTUAL INS. CO., et al.,** | : | Civil No. 2:16-CV-483 |
| | : | |
| Plaintiffs, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **VINCENT GEMMA, et al.,** | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I. Factual Background and Procedural History

This case involves allegations by the plaintiff, Liberty Mutual, against Vincent Gemma, a former Executive Sales Representative for Liberty Mutual. Liberty Mutual alleges that Gemma entered into an unlawful agreement with various businesses, identified collectively as the Northwood and Everest defendants, to divert business and business opportunities from Liberty Mutual at a time when Gemma still worked for Liberty Mutual, in violation of Gemma's contractual and common law duties of loyalty to his employer. (Docs. 1, 37).

In particular, these allegations center around an entity named Northwood Realty Services, a defendant in this case. While Mr. Gemma was employed by Liberty Mutual up through 2016, Northwood frequently referred potential insurance customers to Liberty Mutual. For a number of years this arrangement

1

was memorialized in a Marketing Services Agreement between Liberty Mutual and Northwood. According to Gemma in the Spring of 2015, Northwood became concerned that this Marketing Services Agreement ran afoul of anti-kickback provisions of the Real Estate Settlement Procedures Act, (RESPA), 12 U.S.C. § 2601*, et seq*. For its part, Liberty Mutual denies that the agreement in any way violated RESPA. However, ultimately Liberty Mutual and Northwood terminated their Marketing Services Agreement in November of 2015. Despite the termination of this formal agreement, it appears that Liberty Mutual continued to receive potential customer referrals from Northwood until the Spring of 2016 when Northwood established its own insurance brokerages firm, Everest Insurance, and Mr. Gemma left Liberty Mutual and began working with Northwood and Everest.

Against this factual backdrop, Liberty Mutual has brought claims against Gemma, Northwood, and Everest alleging that the defendants conspired to violate Gemma's employment contract with Liberty Mutual and illegally diverted these business opportunities from the plaintiff. This case was assigned to the Honorable Yvette Kane, and Judge Kane, in turn, referred various discovery disputes which had arisen in the course of this litigation to the undersigned. (Doc. 88).

For an extended period of time, we deferred action on these discovery disputes at the request of counsel who were endeavoring to resolve these matters amicably. (Docs. 102-117). Ultimately, these efforts provide to be unavailing, and

counsel now present us with a series of discovery disputes for our consideration and resolution. (Docs. 79, 86, 117, 120, 123).

One of these discovery motions is a motion to compel filed by Gemma, which seeks some form of discovery from Liberty Mutual regarding this Marketing Services Agreement. (Doc. 79). According to Gemma, the question of whether the Marketing Services Agreement violated RESPA's anti-kickback provisions is relevant to a potential defense in this case; namely, the equitable issue of whether Gemma may assert an unclean hands defense to Liberty Mutual's claim that Gemma, Northwood, and Everest illegally diverted Liberty Mutual's business opportunities. As we understand it, Gemma contends that if Liberty Mutual's agreement with Northwood violated RESPA, then Liberty Mutual lacks clean hands and may not be able to pursue damages claims against Gemma and his co-defendants based upon Gemma's alleged violation of his employment contract and the unlawful diversion of this business some six months after the Marketing Services Agreement was terminated.[1] Therefore, Gemma seeks some type of

---

[1] In addition to this unclean hands claim that Gemma advances on his own behalf, Gemma also suggests that the allegation that Northwood entered into a contractual arrangement to pay kickbacks may also somehow provide a defense for Northwood and its related entity, Everest, as "unsuspecting beneficiaries of Liberty's unlawful scheme." (Doc. 94, at 8 n. 4). Notably, Northwood and Everest have never advanced this claim, or joined in this motion to compel, perhaps because the background of the Marketing Services Agreement is well known to these parties. Moreover, in our experience unwitting kickback arrangements are uncommon.

discovery regarding the Marketing Services Agreement from Liberty Mutual, although it is unclear from Gemma's pleadings exactly what additional discovery he seeks beyond the documents relating to this agreement that have already been produced in discovery.[2]

With Gemma's discovery claims framed in this fashion, Liberty Mutual asserts a multi-facetted rejoinder to this motion to compel, arguing: (1) that it has made appropriate disclosures of the Marketing Services Agreement; (2) that Gemma has not identified what further specific discovery he seeks; (3) that the unclean hands defense is only available in cases involving equitable relief, and does not apply to Liberty Mutual's contractual damages claims; and (4) that Gemma's anti-kickback claim which forms the basis of this motion to compel is factually incorrect, legally irrelevant, disproportionate, and oppressive.

This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, the motion is DENIED.

---

Typically, both those paying and those receiving kickbacks seek to have a common meeting of the minds regarding the nature of these payments.

[2] We understand that the Marketing Services Agreement and related documents have been produced in discovery. (Doc. 97, at 8-9). However, beyond being notified by Liberty Mutual that Gemma's Rule 30(b)(6) deposition notice listed some 17 topics covering this agreement, (Id., at 17 n. 9), we do not know precisely what additional discovery Gemma seeks to compel.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure

generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information. On this score: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Instead, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. We are now enjoined to also consider whether the specific discovery sought is

> [P]roportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

Given the cardinal importance of these issues of relevance and proportionality to informed decision-making in discovery disputes, it is essential that a party seeking to compel discovery provide a clear explanation of what discovery responses are insufficient. This requirement of specificity is embodied in Rule 37.2 of the Local Rules of this Court, which provides that:

> "Any discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37 shall include, in the motion itself or in an attached memorandum, a *verbatim recitation* of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion." (emphasis added).

Angle v. Montag, No. 1:21-CV-00252-RAL, 2022 WL 483815, at *1 (W.D. Pa. Jan. 16, 2022) (quoting Local Rule 37.2); see Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC, No. 19-CV-00893, 2021 WL 5332166, at *2 (W.D. Pa. Nov. 14, 2021).

Judged against these legal benchmarks, we believe that Gemma's motion to compel is problematic in several respects. First, it is difficult to grant this motion without knowing what it is that Gemma seeks to compel in terms of discovery. In this regard, Gemma has not complied with Local Rule 37.2 by providing us with a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion. The failure to more clearly articulate the nature and scope of this discovery demand leaves us at sea in determining

whether further discovery is warranted here and cautions against granting this motion.

Moreover, as a substantive matter, we believe that Gemma's proffer of relevance may not support the potentially far-reaching discovery he seeks. As we have noted, Gemma seeks discovery concerning alleged kickback aspects of a Marketing Services Agreement that formerly existed between the plaintiff, Liberty Mutual, and Gemma's co-defendant, Northwood, a party who apparently does not seek further discovery regarding this agreement. The proffered relevance of this discovery is that it might in some fashion expose unclean hands on Liberty Mutual's part which would prevent the plaintiff from asserting a breach of contract claim against Gemma based upon an entirely unrelated contract.

As a threshold matter, Liberty Mutual contests this claim asserting in a categorical fashion that unclean hands is an equitable defense which can never have relevance to a contractual damages dispute. We are reluctant to embrace this categorical view. Our reluctance stems, in large measure, from the fact that in a different context, the Third Circuit has entertained an unclean hands defense to a contractual claim. Mente Chevrolet Oldsmobile, Inc. v. GMAC, 451 F. App'x 214, 217 (3d Cir. 2011). However, we agree with Liberty Mutual that, on the facts of this case, Gemma's unclean hands defense justification for pursuing this discovery is tenuous at best.

A party making a claim of unclean hands must meet exacting legal thresholds. On this score:

> Unclean hands is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). It is an equitable doctrine which applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir.2001). A claim is barred under the doctrine of unclean hands when "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures the other party and (5) affects the balance of equities between the litigants." Imprisoned Citizens Union v. Shapp, 11 F.Supp.2d 586, 608 (E.D.Pa.1998) (citation and internal quotation marks omitted), aff'd, 169 F.3d 178 (3d Cir.1999); see also Lucey v. Workmen's Comp. Appeal Bd., 557 Pa. 272, 732 A.2d 1201, 1204 (1999) (stating the doctrine of unclean heads "closes the doors of a court of equity to one tainted with inequity or bad faith relative to the matter in which he seeks relief"). The doctrine is to be applied " 'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.' " Ne. Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342, 1354 (3d Cir.1989) (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245–46, 54 S.Ct. 146, 78 L.Ed. 293 (1933)).

Romero v. Allstate Ins. Co., 52 F. Supp. 3d 715, 734–35 (E.D. Pa. 2014).

The requirement that a claim of unclean hands have some direct, immediate, and necessary relationship to the matter in litigation fatally undermines this defense as a justification for further, wholesale discovery of this Marketing

Services Agreement between Liberty Mutual and Northwood. In our view, that Marketing Services Agreement is simply too remote legally, logically, topically, and temporally from this entirely unrelated breach of employment contract claim to serve as the basis for potentially far-reaching but tangential discovery. Simply put, even if we assumed that the Marketing Services Agreement that was terminated by Liberty Mutual and Northwood in November of 2015 in some way ran afoul of RESPA, we cannot see how that fact would provide Gemma with a defense to a claim that in the Spring of 2016 he violated his employment contract with Liberty Mutual. Given the narrow parameters of the uncleans hands defense, this contention is simply unavailing on the facts of the instant case. Therefore, it provides no grounds for compelling further discovery into this issue and this motion to compel will be denied.[3]

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: May 26, 2022

---

[3] While we deny this motion to compel, which was open-ended and largely undefined in its scope, we recognize that depositions in this case will likely entail a discussion of the process by which Northwood withdrew from the Marketing Services Agreement with Liberty Mutual and later elected to establish Everest Insurance and hire Gemma. In this context, some limited questioning concerning any potentially problematic aspects of the Marketing Services Agreement may well be appropriate.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIBERTY MUTUAL INS. CO., et al.,** | : | Civil No. 2:16-CV-483 |
| Plaintiffs, | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **VINCENT GEMMA, et al.,** | : | |
| Defendants. | : | |

## ORDER

AND NOW this 26th day of May, 2022, in accordance with the accompanying Memorandum, IT IS ORDERED that Gemma's motion to compel (Doc. 79) is DENIED.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge