IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIBERTY MUTUAL INS. CO., et al.,** | : | Civil No. 2:16-CV-483 |
| | : | |
| Plaintiffs, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **VINCENT GEMMA, et al.,** | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION AND ORDER

I. **Factual Background and Procedural History**

This case involves allegations by the plaintiff, Liberty Mutual, against Vincent Gemma, a former Executive Sales Representative for Liberty Mutual. Liberty Mutual alleges that Gemma entered into an unlawful agreement with various businesses, identified collectively as the Northwood and Everest defendants, to divert business and business opportunities from Liberty Mutual at a time when Gemma still worked for Liberty Mutual, in violation of Gemma's contractual and common law duties of loyalty to his employer. (Docs. 1, 37).

In particular, these allegations center around an entity named Northwood Realty Services, a defendant in this case. While Mr. Gemma was employed by Liberty Mutual up through 2016, Northwood frequently referred potential insurance customers to Liberty Mutual. For a number of years, this arrangement

1

was memorialized in a Marketing Services Agreement between Liberty Mutual and Northwood. However, Liberty Mutual and Northwood ultimately terminated their Marketing Services Agreement in November of 2015. Despite the termination of this formal agreement, it appears that Liberty Mutual continued to receive potential customer referrals from Northwood until the Spring of 2016 when Northwood established its own insurance brokerages firm, Everest Insurance, and Mr. Gemma left Liberty Mutual and began working with Northwood and Everest.

Against this factual backdrop, Liberty Mutual has brought claims against Gemma, Northwood, and Everest alleging that the defendants conspired to violate Gemma's employment contract with Liberty Mutual and illegally diverted these business opportunities from the plaintiff. This case was assigned to the Honorable Yvette Kane, and Judge Kane, in turn, referred various discovery disputes which had arisen in the course of this litigation to the undersigned. (Doc. 88).

For an extended period of time, we deferred action on these discovery disputes at the request of counsel who were endeavoring to resolve these matters amicably. (Docs. 102-117). Ultimately, these efforts proved to be unavailing, and counsel now present us with a series of discovery disputes for our consideration and resolution. (Docs. 79, 86, 117, 120, 123).

We now turn to consideration of the final battery of discovery motions filed by Liberty Mutual. (Docs. 86, 117, 120). In these motions, Liberty Mutual

catalogues what it regards as an array of discovery shortcomings by the defendants. Thus, according to Liberty Mutual, the defendants have failed to produce some materials in their native format; have failed to conduct thorough searches for electronically stored information; have neglected to produce certain calendars and emails; have failed to conduct a proper forensic examination of electronic devices; and have failed to properly account for items which Liberty Mutual believes that the defendants possess but have failed to produce.

The defendants, in turn, insists that in many instances they have properly responded to these discovery requests by reporting that the information sought by Liberty Mutual either does not exist or does not exist in the format requested. The defendants have also responded to some categories of information, which they believe would be unduly burdensome, by producing spreadsheets summarizing this data, spreadsheets that Liberty Mutual assails as inadequate and inaccurate.

For its part, Liberty Mutual's rejoinder to the defendants' contentions largely consists of labeling the defendants' assertions as fallacies. Thus, we are presented with discovery disputes that are advanced with great vehemence. However, given the defendants' insistence that many classes of information simply do not exist, we have few means of resolving these disputes in the abstract. Moreover, we note that while the parties are embroiled in these disputes regarding document discovery, it

3

is not apparent to us that they have sought to further clarify their dispute through Rule 30(b)(6) depositions of knowledgeable records custodians.

Since we cannot compel the production of that which does not exist, and cannot divine on the current record whether additional discoverable information exists, we will decline to order further production of items that may not exist and will instead direct the parties to engage in deposition practice to determine what materials may still exist that are responsive to these discovery demands. In addition, with respect to the information which has been summarized in spreadsheets, the parties shall confer and attempt to agree upon some document sampling procedure which can minimize the burdens of discovery while permitting some evaluation of the relevance of this information. Finally, we will direct the parties to engage in a candid assessment of whether settlement discussions would be useful in this protracted lawsuit.

## II. Discussion

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

> outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

Accordingly, at the outset it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information. On this score: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Instead, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter

6

that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. We are now enjoined to also consider whether the specific discovery sought is

> [P]roportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

> Further:
>
> One other immutable rule defines the court's discretion when ruling on motions for this type. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho–McNeil–Janssen Pharmaceuticals, Inc., No. 08–5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08–1698, 2009 WL 975251 (M.D. Pa. April 9, 2009).

Tech v. United States, 284 F.R.D. 192, 198 (M.D. Pa. 2012).

Guided by these principles, we turn to the parties' current discovery disputes. On this score, we note that, in large measure, the parties seem to be

arguing over whether certain categories of information still exist or may be retrieved. In this regard, the parties make competing, contrasting, conflicting, and facially irreconcilable averments. The plaintiff insists that more information must exist, and the defendants deny that it does.

We cannot order the production of things that do not exist, and we cannot know the answer to whether additional information exists or can be retrieved on the current factual record. Therefore, without more information, it would be premature to order the production of additional information. Fortunately, however, the parties can adduce this additional information which will aid all in discovery through deposition practice, and particularly through Rule 30(b)(6) depositions of record custodians. Accordingly, we will deny the request to produce these categories of information which the defendants attest do not exist, but will direct the parties to develop the factual record regarding the sufficiency of document production through depositions.

In addition, we note that the parties are engaged in an acrimonious dispute regarding the sufficiency of summary spreadsheets produced by the defendants, and the necessity for discovery of information beyond these summary spreadsheets. Once again, this dispute is presented by the parties with great vehemence but with little in the way of information that would enable us to make fully informed decisions regarding the relevance and burdensomeness of these

requests. Therefore, to the extent that the plaintiff seeks some form of discovery of voluminous materials from the defendants, the parties are directed to consult and confer with an eye towards determining whether any mutually agreeable sampling protocol could address the parties' competing concerns.

Finally, we note that the parties have been engaged in this litigation for an extended period of time. Before they indulge in further protracted litigation, with all of its attendant costs and inconvenience, we deem it appropriate for all parties to pause, reflect, and consider the benefits of mediation of their dispute. Accordingly, we will set a timetable for the parties to report to us regarding whether, and on what terms, settlement discussions might be undertaken in this case.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: June 2, 2022

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIBERTY MUTUAL INS. CO., et al.,** | : | **Civil No. 2:16-CV-483** |
| Plaintiffs, | : | |
| v. | : | **(Judge Kane)** |
| | : | |
| **VINCENT GEMMA, et al.,** | : | **(Magistrate Judge Carlson)** |
| Defendants. | : | |

## **ORDER**

AND NOW this 2d day of June 2022, in accordance with the accompanying Memorandum, IT IS ORDERED that Liberty Mutual's motions to compel (Docs. 86, 117, and 120), are GRANTED in part and DENIED in part as follows:

1. With respect to documents or records whose existence is disputed, since we cannot compel the production of that which does not exist and cannot divine on the current sparse record whether additional discoverable information exists, we will decline to order further production of items that may not exists at this time and will instead direct the parties to engage in deposition practice to determine what materials may still exist that are responsive to these discovery demands.

2. In addition, with respect to the information which has been summarized in spreadsheets, the parties shall confer and attempt to agree upon some document sampling procedure.

In order to determine whether this case is in amenable to settlement, the parties shall consult, confer and by **June 17, 2022,** advise the undersigned regarding whether the parties wish to engage in settlement discussions and on what terms, settlement discussions might be undertaken in this case.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge